**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| PATRICK GRAY, Individually and For Others Similarly Situated<br><br>v.<br><br>WALBRIDGE ALDINGER LLC | Case No. _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Patrick Gray (Gray) brings this collective action lawsuit to recover unpaid overtime wages and other damages from Walbridge Aldinger LLC (Walbridge) under the Fair Labor Standards Act (FLSA).

2. Walbridge employed Gray as one of its Straight Time Employees (defined below).

3. Walbridge paid Gray and the other Straight Time Employees by the hour.

4. The Straight Time Employees regularly worked more than 40 hours a week.

5. But Walbridge did not pay its Straight Time Employees overtime.

6. Instead, Walbridge paid the Straight Time Employees the same hourly rate for all hours worked, including those after 40 in a workweek (or "straight time for overtime").

7. Indeed, Walbridge uniformly misclassified its Straight Time Employees as exempt from overtime.

8. But Walbridge never paid its Straight Time Employees on a "salary basis."

9. Walbridge's uniform straight time for overtime pay scheme violates the FLSA by depriving the Straight Time Employees of the "time and a half" overtime pay they are owed for all hours worked after 40 in a workweek.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over Walbridge because Walbridge is a domestic corporation headquartered in Detroit, Michigan.

12. Venue is proper because Walbridge maintains its headquarters in Detroit, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Gray worked for Walbridge as a Safety Engineer from approximately March 2008 until April 2022.

14. Throughout his employment, Walbridge misclassified Gray as exempt from overtime.

15. But Walbridge never paid Gray on a "salary basis."

16. Instead, Walbridge paid Gray straight time for overtime.

17. Gray's written consent is attached as **Exhibit 1**.

18. Gray brings this action on behalf of himself and all other similarly situated employees who Walbridge paid under its straight time for overtime pay scheme.

19. Walbridge paid each of these employees the same hourly rate for all hours worked, including those worked after 40 hours in a workweek.

20. The putative collective of similarly situated employees is defined as:

> **All Walbridge employees who were paid straight time for overtime at any time during the past 3 years ("Straight Time Employees").**

21. Walbridge is a Michigan limited liability company that maintains its headquarters in Detroit, Michigan.

22. Walbridge can be served with process by serving its registered agent: **Thomas D. Dyze, 777 Woodward Avenue, Suite 300, Detroit, Michigan 48226**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

23. At all relevant times, Walbridge was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all relevant times, Walbridge was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25. At all relevant times, Walbridge was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise

3

working on goods or materials—such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment—that have been moved in or produced for commerce.

26. At all relevant times, Walbridge has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27. At all relevant times, the Straight Time Employees were Walbridge's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

28. At all relevant times, the Straight Time Employees were engaged in commerce or in the production of goods for commerce.

29. Walbridge uniformly paid the Straight Time Employees the same hourly rate for all hours worked, including those after 40 in a workweek.

30. As a result of Walbridge's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, include Gray) did not receive overtime at the premium rates required by the FLSA.

31. Walbridge applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title, client/project assignment, or geographic location.

32. By paying the Straight Time Employees straight time for overtime, Walbridge did not pay the Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

33. Walbridge's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

34. "Walbridge is a full-service construction company headquartered in Detroit"[1] (though it has operations across the country).

35. To meet its business objectives, Walbridge hires workers, like the Straight Time Employees, who it assigns to provide services to its clients.

36. Walbridge pays its Straight Time Employees on an hourly basis.

37. Walbridge routinely schedules its Straight Time Employees to work more than 40 hours a week.

38. Instead of paying its Straight Time Employees at 1.5 times their regular rates of pay for hours worked after 40 in a workweek, Walbridge pays them same hourly rate for all hours worked.

39. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practice for similar work.

40. For example, Gray worked for Walbridge as a Safety Engineer from approximately March 2008 until April 2022.

41. As a Safety Engineer, Gray's primary responsibilities included observing the work of employees and third-party contractors to ensure they complied with

---

[1] https://www.walbridge.com/about/company-overview/ (last visited July 12, 2023).

5

Walbridge's (and its clients') safety policies, procedures, plans, and specifications, as well as all applicable safety codes and regulations, and completing reports on the same.

42. Walbridge misclassified Gray as exempt from overtime.

43. Walbridge paid him under its illegal straight time for overtime pay scheme.

44. For example, in 2021, Walbridge paid Gray approximately $42/hour for all hours worked, including those after 40 in a workweek.

45. Walbridge requires all Straight Time Employees to record the number of hours they work.

46. Walbridge never paid the Straight Time Employees on a "salary basis."

47. Walbridge did not pay its Straight Time Employees a guaranteed salary that was not subject to deductions.

48. If the Straight Time Employees work fewer than 40 hours, Walbridge only pays them for the hours they actually work.

49. But Gray and the other Straight Time Employees regularly work more than 40 hours in a workweek.

50. Gray worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

51. Likewise, each Straight Time Employee worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

52. Indeed, Gray and the Straight Time Employees typically work 10+ hours a day, for at least 5 days a week.

53. Gray and the other Straight Time Employees work in accordance with the schedule set by Walbridge (and/or its clients).

54. When Gray and the Straight Time Employees work more than 40 hours in a workweek, Walbridge does not pay them overtime at rates not less than 1.5 times their regular rates of pay.

55. Walbridge only pays Gray and the Straight Time Employees straight time for overtime.

56. Despite misclassifying Gray and the Straight Time Employees as exempt, Gray and the other Straight Time Employees primarily perform non-exempt job duties.

57. The Straight Time Employees' primary duties do not include supervising other Walbridge employees.

58. The Straight Time Employees' primary duties are not management.

59. In sum, Gray and the Straight Time Employees are non-exempt employees and, therefore, entitled to overtime wages.

60. But Walbridge does not pay these non-exempt employees, including Gray and the Straight Time Employees, overtime wages when they work more than 40 hours in a workweek.

### COLLECTIVE ACTION ALLEGATIONS

61. Gray incorporates all other paragraphs by reference.

62. Gray brings his claims as a collective action on behalf of himself and the other Straight Time Employees.

63. The Straight Time Employees are uniformly victimized by Walbridge's straight time for overtime pay scheme, which is in willful violation of the FLSA.

64. Other Straight Time Employees worked with Gray and indicated they were paid in the same manner, performed similar work, and were subject to Walbridge's same straight time for overtime pay scheme.

65. Based on his experience with Walbridge, Gray is aware Walbridge's illegal practices were imposed on the Straight Time Employees.

66. The Straight Time Employees are similarly situated in all relevant respects.

67. Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

68. Any relevant exemption defenses would require Walbridge to pay the Straight Time Employees on a salary basis.

69. Because Walbridge fails the salary basis test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

70. The *relevant* job duty is whether the Straight Time Employees worked more than 40 hours in a week (which, by definition, they did).

71. Therefore, the specific job titles or precise job locations of the various Straight Time Employees do not prevent collective treatment.

72. Rather, Walbridge's uniform straight time for overtime pay scheme renders Gray and the other Straight Time Employees similarly situated for the purposes of determining their right to overtime pay.

73. Walbridge's records reflect the number of hours worked each week by the Straight Time Employees.

74. Walbridge's records also show the Straight Time Employees were paid "straight time," instead of "time and a half," for their overtime hours.

75. The back wages owed to Gray and the other Straight Time Employees can be calculated using the same formula applied to the same records.

76. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Walbridge's records, and there is no detraction from the common nucleus of liability facts.

77. Therefore, the issue of damages does not preclude collective treatment.

78. Gray's experiences are therefore typical of the experiences of the Straight Time Employees.

79. Gray has no interest contrary to, or in conflict with, the Straight Time Employees that would prevent collective treatment.

80. Like each Straight Time Employee, Gray has an interest in obtaining the unpaid wages owed under federal law.

81. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

82. Absent a collective action, many Straight Time Employees will not obtain redress for their injuries, and Walbridge will reap the unjust benefits of violating the FLSA.

83. Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

84. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

85. The questions of law and fact that are common to each Straight Time Employee predominate over any questions affecting solely the individual members.

86. Among the common questions of law and fact are:

   a. Whether Walbridge applied its straight time for overtime pay scheme uniformly to the Straight Time Employees;

   b. Whether Walbridge misclassified Gray and the Straight Time Employees as exempt from the FLSA's overtime provisions;

   c. Whether Gray and the Straight Time Employees are non-exempt employees entitled to overtime wages;

   d. Whether Walbridge's straight time for overtime pay scheme satisfies the "salary basis" test;

   e. Whether Walbridge's straight time for overtime pay scheme deprived Gray and the Straight Time Employees of premium overtime wages they are owed under the FLSA;

10

    f.      Whether Walbridge's violations of the FLSA resulted from a continuing course of conduct;

    g.      Whether Walbridge's decision to misclassify Gray and the Straight Time Employees as exempt was made in good faith;

    h.      Whether Walbridge's decision not to pay Gray and the Straight Time Employees overtime was made in good faith; and

    i.      Whether Walbridge's violations of the FLSA were willful.

87. Gray knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

88. As part of its regular business practices, Walbridge intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Straight Time Employees.

89. Walbridge's illegal straight time for overtime pay scheme deprived Gray and the other Straight Time Employees of the premium overtime wages they are owed under federal law.

90. There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

91. This notice should be sent to the Straight Time Employees pursuant to 29 U.S.C. § 216(b).

92. The Straight Time Employees are known to Walbridge, are readily identifiable, and can be located through Walbridge's business and personnel records.

### WALBRIDGE'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

93. Gray incorporates all other paragraphs by reference.

94. Walbridge knew it was subject to the FLSA's overtime provisions.

95. Walbridge knew the FLSA required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

96. Walbridge knew each Straight Time Employee worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it expected and required these workers to do so.

97. Walbridge knew the Straight Time Employees were its hourly employees.

98. Walbridge knew it paid the Straight Time Employees on an hourly basis.

99. Walbridge knew it paid the Straight Time Employees straight time for overtime.

100. Walbridge knew it did not pay the Straight Time Employees on a "salary basis."

101. Walbridge knew it did not pay the Straight Time Employees any guaranteed salary that was not subject to deduction based on the number of hours or days worked.

102. Walbridge knew its straight time for overtime pay scheme did not satisfy the salary basis test.

103. Walbridge knew it needed to pass the salary basis test to qualify for the exemptions it claimed with respect to the Straight Time Employees.

104. Walbridge knew the Straight Time Employees' primary duties do not include supervising any Walbridge employees.

105. Walbridge knew Gray and the Straight Time Employees' primary duties were not management.

106. Walbridge knew the Straight Time Employees' primary duties do not include exercising independent discretion or judgment with respect to matters of significance.

107. Walbridge knew the Straight Time Employees primarily performed non-exempt work.

108. Nonetheless, Walbridge uniformly misclassified the Straight Time Employees as exempt and refused to pay them overtime.

109. Walbridge's decision to misclassify Gray and the Straight Time Employees as exempt employees was neither reasonable, nor was the decision to misclassify these employees as exempt made in good faith.

110. Likewise, Walbridge's failure to pay Gray and the Straight Time Employees overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

111. Walbridge knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

112. Indeed, Walbridge has been sued previously by employees for failing to pay overtime wages, including for paying workers straight time for overtime. *See, e.g., Rice v. Walbridge Aldinger LLC*, No. 2:22-CV-11790 (E.D. Mich.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

113. Gray incorporates all other paragraphs by reference.

114. Gray brings his FLSA claims as a collective action on behalf of himself and the other Straight Time Employees.

115. Walbridge violated, and is violating, the FLSA by employing the Straight Time Employees in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

116. Walbridge's unlawful conduct harmed Gray and the other Straight Time Employees by depriving them of the overtime wages they are owed.

117. Accordingly, Gray and the Straight Time Employees are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

118. Gray demands a trial by jury.

## **RELIEF SOUGHT**

WHEREFORE, Gray individually, and on behalf of the Straight Time Employees, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Straight Time Employees allowing them to join this action by filing a written notice of consent;

    b.    An Order pursuant to Section 16(b) of the FLSA finding Walbridge liable for unpaid overtime wages due to Gray and the Straight Time Employees, plus liquidated damages in amount equal to their unpaid compensation;

    c.    A Judgment against Walbridge awarding Gray and the Straight Time Employees all their unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

    d.    An Order awarding attorney's fees, costs, and expenses;

    e.    Pre- and post-judgment interest at the highest applicable rates; and

    f.    Such other and further relief as may be necessary and appropriate.

Dated: July 12, 2023.                    Respectfully submitted,

                                              **JOSEPHSON DUNLAP LLP**

                                              By: */s/ Michael A. Josephson*
Michael A. Josephson
TX Bar No. 24014780
Andrew W. Dunlap
TX Bar No. 24078444
Alyssa J. White
TX Bar No. 24073014
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Jennifer L. McManus (P65976)
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com
*Local Counsel for Plaintiff*

**ATTORNEYS FOR PLAINTIFF & THE PUTATIVE CLASS MEMBERS**